UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
————————————————————————

ROMMEL LEWIS,

        Petitioner,        **DECISION AND ORDER**
                                   **No. 06-CV-0513(MAT)**

    -vs-

JOHN BURGE,

        Respondent.
————————————————————————

## I.   Introduction

Rommel Lewis ("Lewis" or "Petitioner"), an inmate at Clinton Correctional Facility, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of two judgments of conviction entered against him on March 8, 2001, and October 15, 2001, in Monroe County Court of New York State. The charges stemmed from a fourteen-count indictment which was severed prior to trial.

The first conviction resulted from Lewis's guilty plea to counts five through fourteen of the indictment which involved incidents that occurred on March 20, May 13, May 22, and May 23, 2000: Assault in the Second Degree (N.Y. Penal Law ("P.L.") § 120.05(2)); Assault in the First Degree (P.L. § 120.10(1)); Assault in the First Degree (P.L. § 120.10(3)); Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03(2)); Robbery in the First Degree (P.L. § 160.15(2)); Robbery in the First Degree (P.L.

§ 160.15(4)); Assault in the Second Degree (P.L. § 120.05(6)); Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03(2)); Criminal Possession of Weapon in the Third Degree (P.L. § 265.02(4)); and Criminal Possession of a Weapon in the Fourth Degree (P.L. § 265.01(1)).

The second judgment of conviction was obtained after a jury trial on charges one through four of the indictment (Murder in the Second Degree (Felony Murder; two counts) (P.L. § 125.25(3)); Robbery (P.L. § 160.15(2)) in the First Degree and Attempted Robbery in the First Degree (P.L. §§ 110.00/160.15(2)), all of which stemmed from an incident on April 27, 2000.

## II.  Factual Background and Procedural History

### A.   State Court Proceedings

#### 1.   The Plea

When the parties appeared before Monroe County Court Judge Patricia Marks on January 22, 2001, there was a pending plea offer to four counts of the indictment (which included the murder counts) with a sentencing range of 25 or 40 years to life. After the prosecutor and the trial court explained the possible aggregate sentence, <u>see</u> H.3,[1] Lewis stated that he understood the plea offer,

---

[1]    Numerals preceded by "H." refer to the pages from the transcript of the pre-trial proceeding conducted on January 22, 2001. Numerals preceded by "P." refer to the pages from the transcript of the plea proceeding conducted on January 24, 2001. Numerals preceded by "T." refer to the pages from the transcript of Petitioner's trial.

but wondered what his sentence would be if he just "cop[ped] out" to the robbery and assaults and took the murders to trial. H.4. The prosecutor indicated that any sentence less than 50 years for a plea to the robbery and assault charges would not be acceptable. Lewis indicated that he did not understand that. The following exchange occurred:

```
Court:          He'll be recommending 50 years.
Defendant:      50 years for the cop-out, too?
Court:          Right.
Defendant:      Oh, man. No, I can't accept that plea.
```

H.5. The matter was adjourned for trial.

Two days later, the parties appeared before County Court Judge Stephen Sirkin, who noted that if Lewis pleaded guilty to counts "5, 6, 9, 12, 13, and 14, that the [c]ourt is going to sentence without a promise is my understanding." P.2. Defense counsel agreed that this was correct. Lewis affirmed that he had discussed the case with his attorney, did not need additional time, and did not have any questions about the plea offer. P.3. After making the preliminary inquiries about Lewis's physical and mental state and ascertaining that Lewis was acting under his own volition, the judge noted that there were no sentence promises being made. When Lewis indicated that he did not understand, the judge explained that he could sentence Lewis in the range of five to ninety years. Lewis then indicated he understood, and the trial court proceeded to conduct a factual colloquy and enter Lewis's guilty plea.

For these convictions, Lewis received determinate sentences aggregating 70 years, plus five years of post-release supervision.

### 2.  The Trial

What follows is a summary of the evidence set forth at trial. On April 27, 2000, at about midnight, Eric Jenkins ("Jenkins") and William Barnwell ("Barnwell") were robbed and shot to death in front of 113 Columbia Street in the City of Rochester. When Karen Bryant ("Karen"), who lived at that address, heard a gunshot and looked outside, she saw her cousin, Jenkins, and her friend, Barnwell, standing with their backs to a blue car that had been in the driveway. Their hands were up in the air, and two men brandishing guns were going through their pockets. Bryant recognized one of the assailants as Benjamin Switzer ("Switzer"), a former classmate of hers. The other man was wearing a hoody and she could only see that he was a dark-skinned black male and between 5'8"- and 5'10"-tall. See T.284-93.

Karen's brother, Ron Bryant ("Ron"), also heard gunshots. When he looked out the window, he saw the hold-up in progress and recognized Switzer as one of the robbers. Ron watched as Switzer held up his gun and began firing at Barnwell, who immediately fell to the ground. As Jenkins attempted to run, Switzer turned and shot him. See T.310-18. Ron recalled that the man in the hoody had started running away before either Barnwell or Jenkins was shot. T.327.

Another eye-witness, Damiano Smith ("Smith"), was at his home at 116 Columbria Street when he heard a shot. Looking in the direction from where the shot came, he saw a lighter-skinned man already pointing a gun at Barnwell and Jenkins, while the second man, wearing a hoody, was patting down the two victims. Smith saw a muzzle flash and heard a gunshot from the direction of where the first man was standing. The man in the hoody then ran off and, after briefly searching the victims' bodies, the shooter followed. T.332-40.

When Ron arrived at his cousin's side, Jenkins was still alive. He began to cry and then fell silent. By that time, the police had arrived. T.318-19. Ballistics testing revealed that the bullets recovered from the scene and from the bodies of the two victims had been fired from the same weapon. T.348-49.

About a month later, the police arrested Lewis in connection with the shooting. After waiving his <u>Miranda</u> rights, Lewis denied any involvement but stated that he knew that one of the victims was named Eric and that Switzer had already been arrested in connection with the shooting. T.371-84, 424-33. Lewis described Switzer as his "right-hand man". <u>Id.</u>

After a half-hour break in the questioning, the officers told Lewis that Switzer had implicated him as the shooter. Lewis was incredulous, stating, "No matter what, you shouldn't give a statement against your man, your partner, your friend." Even after

being read part of Switzer's written statement, Lewis maintained that Switzer was lying. He claimed that Switzer had done the shooting, but was "too weak to do the time." Lewis then admitted that he was present at the shooting but refused to say anything further because he was "loyal" to Switzer and to talk would be engaging in "tit for tat". He declined to talk about the incident because it was "'fucked up' and that bothered him." <u>See</u> T.388-91, 436-38.

About two hours later, Lewis announced that he was willing to discuss the incident but would not sign a statement because it was a "homicide . . . [and] [t]hat shit's too serious." Lewis described the victims, whom he identified by name, as "weak", easy targets because they had been robbed in the past and still did not carry guns. Lewis felt such "small time robberies" were beneath him, but he went along with Switzer's suggestion to "rob them niggers" because "[r]ight or wrong, you still have to hold down your man." T.391-94, 439-42, 447.

Lewis described how Switzer approached Jenkins and Barnell in a friendly manner, "slapping up" or "high-fiving" them, to put them off their guard. Switzer then pulled out a .357 handgun and hit Jenkins "upside the head with it", causing it to discharge. When Switzer demanded their money, Jenkins emptied his pockets of keys, cash, and change, throwing it all on the ground. Because Barnell did not have any money, Lewis turned away to leave, and "that's

-6-

when [Switzer] clapped them", meaning that Switzer shot the two men. Afterwards, Lewis divided up the spoils, giving $20 to Switzer and keeping the remaining $63 for himself. Lewis claimed that he did not have a weapon during the incident. See T.394-98, 443-48.[2]

The defense did not present a direct case. Trial counsel argued that the police investigators had fabricated and coerced Lewis's confession. Counsel argued that it was preposterous to think that Lewis would have voluntarily acknowledged being present at the crime scene after denying it for several hours. Pointing to the absence of a written statement from Lewis, defense counsel urged the jury not to accept the police officers' testimony about what Lewis allegedly said to them. T.487-88.

The jury returned a verdict finding Lewis guilty of felony murder, robbery, and attempted robbery as charged in the indictment. T.549-53.[3] For the murder convictions, Lewis was sentenced to two consecutive indeterminate terms of 25 years to life; for the robbery conviction, a determinate term of 25 years;

---

[2]

The police did not inform Lewis about the caliber of the murder weapon, the loose change found on the ground, or the pizza box that Lewis spontaneously said was not at the scene. T.396, 443-45. Nor did any of the media reports mention these facts. See id.

[3]

Switzer was convicted of four counts of first degree murder, two counts of second degree murder, and two counts of first degree attempted robbery. These convictions were upheld on appeal. People v. Switzer, 15 A.D.3d 913, 788 N.Y.S.2d 760 (4th Dept. 2005), lv. denied, 5 N.Y.3d 770 (2005), habeas corpus denied sub nom. Switzer v. Graham, No. 05-CV-6706(MAT), 2010 WL 1543855 (W.D.N.Y. Apr. 16, 2010).

and for the attempted robbery conviction, a determinate term of 15 years.

The appeals of the two judgments of conviction were prosecuted separately. The Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed both judgments. People v. Lewis, 11 A.D.3d 954 (4th Dept. 2004) (appeal 1, from the guilty plea; also resolving the claims raised in appeal 2 from the jury verdict); People v. Lewis, 11 A.D.3d 9604 (4th Dept. 2004) (appeal 2; same memorandum as in appeal 1). The New York Court of Appeals denied leave to appeal in both cases.

**B.    The Federal Habeas Proceeding**

This timely habeas petition followed. While the petition was pending, Petitioner sought and received a stay from Magistrate Judge Schroeder to exhaust claims regarding his resentencing in light of a change in the law pertaining the necessity for the trial judge to state on the record that a term of post-release supervision was part of a defendant's sentence.

Petitioner then sought to amend the petition to add three claims, and Respondent opposed the motion. The Court granted permission to include the first proposed claim. Although both parties conceded that the first proposed amended claim had already been raised in the original petition, the Court granted the request to amend so as to make clear that this contention would be adjudicated when the Court decided the petition. The Court denied

with prejudice the request to include the second and third proposed claims, finding that the second claim was untimely and did not relate back to the original petition, and was factually and legally baseless; and that the third claim was not cognizable and, in any event, was moot. In his reply to Respondent's memorandum in opposition to the petition, Petitioner has made a motion for reconsideration of the Court's order disposing of the motion to amend.

For the reasons that follow, the petition is dismissed, and the motion for reconsideration is denied.

## III. Analysis of the Petition

### A.    Involuntariness of the Guilty Plea (Ground I)

Respondent contends that Lewis's claim regarding the voluntariness of his guilty plea is procedurally defaulted under the "adequate and independent state ground" doctrine because he failed to properly preserve the claim for appeal by moving to withdraw the plea. Respondent contends that the appellate court relied upon an adequate and independent state ground to dismiss the claim as procedurally barred, thereby precluding further federal habeas review of the claim. See, e.g., Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the

federal claim.") (citation omitted). As the claim is easily resolved on the merits, the Court proceeds to address the substance of the claim rather than deciding that procedural default issue.

The standard for determining voluntariness is whether the guilty plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). Since pleading guilty necessarily involves the relinquishment of several constitutional rights, the record must affirmatively demonstrate that the plea was intelligent and voluntary, and that the defendant was informed of certain direct consequences of his plea. Boykin v. Alabama, 395 U.S. 238, 242 (1969).

The plea transcript confirms that Lewis fully understood the consequences of his decision to forego trial, that he had sufficient time to discuss the case with his attorney, and that he understood the terms of the plea agreement. In particular, as discussed further below in Section III.B.1, Petitioner unequivocally affirmed that he understood he was not being promised any particular sentence and that he could receive a term of imprisonment in the range of five to ninety years. Petitioner then admitted all of the necessary elements of the crimes which were the subject of the plea agreement.

A district court on habeas review may rely on a petitioner's sworn statements and hold him to them. See Blackledge v. Allison,

-10-

431 U.S. 63, 74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.")(citations omitted). Petitioner clearly is a street-smart individual who does not lack experience with the criminal justice system, as demonstrated by his criminal record prior to the convictions here at issue, his statements to the police during his interrogation, and his statements to the judge during the various proceedings. On this record, his claims that his guilty plea was not knowing, voluntary, or intelligent are "contentions that in the face of the record are wholly incredible." Blackledge, 431 U.S. at 74.

**B.    Ineffective Assistance of Trial Counsel (Grounds II & IV)**

The Sixth Amendment to the U.S. Constitution guarantees criminal defendants the right to the assistance of counsel during their criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-85 (1984). This right extends to the plea-bargaining process, during which defendants are "entitled to the effective assistance of competent counsel." Lafler v. Cooper, ___ U.S. ___, ___, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (internal quotation marks omitted).

In <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), the Supreme Court held that <u>Strickland</u> applies equally to the plea-bargaining process. 474 U.S. at 58-59 (concluding that the defendant had not demonstrated that his counsel was ineffective in erroneously advising him about the parole-related conditions set forth in the proposed plea agreement because the defendant failed to allege that he would have rejected the plea but for counsel's advice); <u>see also</u> <u>Lafler</u>, 132 S.Ct. at 1384. Under <u>Strickland</u>, the petitioner must show that counsel's performance was deficient and that counsel's errors prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687. That is, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

When evaluating counsel's performance under the first step of <u>Strickland</u>, a reviewing court applies a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "Even under <u>de novo</u> review, the standard for judging counsel's representation is a most deferential one." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 788 (2011).

### 1. Ineffective Assistance of Counsel During Plea Negotiations (Ground II)

Here, the Appellate Division adjudicated Lewis's ineffective assistance of trial counsel claim on the merits, finding that he "received meaningful representation during the plea process[.]" People v. Lewis, 11 A.D.3d at 955 (citing, inter alia, People v. Ford, 86 N.Y.2d 397, 404 (1995)). Therefore, the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1) applies. E.g., Richter, 131 S. Ct. at 784 (citing 28 U.S.C. § 2254(d)(1)). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application of' such law, § 2254(d)(1). . . ." Richter, 131 S. Ct. at 785.

Lewis asserts in a conclusory fashion that it was professionally unreasonable for trial counsel to allow him to plead guilty without a sentencing commitment from the trial court. Notably, Lewis has not alleged that trial counsel made an inaccurate estimate of his potential sentencing exposure or falsely assured him of a particular sentence. He simply faults counsel for not obtaining a promise to impose a particular sentence, the appropriate length of which he does not specify. The Court has found no authority for the proposition that an attorney must secure

a specific sentencing promise for his client. See, e.g., Wellnitz v. Page, 420 F.3d 935, 936-37 (10th Cir. 1970) ("[A]bsent a reckless promise of a specific sentence or the unfair holding out of an assurance of leniency in exchange for a guilty plea, an erroneous sentence estimate by defense counsel, based on experience or instinct, or an erroneous expectation by the defendant, based on the prediction, does not render a plea involuntary."). Rather, the attorney must ensure that the client understood the terms of plea agreement. Here, the record fairly supports the conclusion that Lewis did understand his potential sentencing exposure, as the following excerpts show:

| | |
|---|---|
| Court: | Are you pleading guilty of your own free will? |
| Defendant: | Yes. |
| Court: | I understand–I understand there's going to be no sentencing promise here. |
| Defendant: | I don't understand. |
| Court: | Okay. It can be–I guess the range in sentencing is from five years to ninety years, do you understand that? |
| Defendant: | Yes. |

P.4 After a brief colloquy with the prosecutor, the trial court revisited the issue with Petitioner:

| | |
|---|---|
| Court: | Did anybody make any promises to you about sentence at all? |
| Defendant: | No. |
| Court: | So I can give you anywhere between five and ninety basically, right? |
| Defendant: | Yes. |

P.5 The trial court thus advised Lewis unambiguously on two separate occasions that he could receive anywhere from five to

ninety years, and Lewis unequivocally responded in the affirmative that he understood. What trial counsel did or did not tell Petitioner prior to pleading guilty has never been placed before this Court or any of the state courts. Speculation and conjecture, unsupported by any verified facts, are an insufficient basis on which to found a claim of ineffective assistance. See Lesko v. Lehman, 925 F.2d 1527, 1537-38 (3d Cir. 1991) ("A collateral challenge to a guilty plea may be summarily dismissed when [a petitioner's] allegations . . . are inconsistent with the bulk of his conduct, and when he offers no detailed and specific facts. . . .") (quotation omitted; alteration in original). The Court is left with Petitioner's assurances made under oath, in open court, and on the record, that he understood the potential range of his sentences. "Solemn declarations in open court carry a strong presumption of verity," Blackledge v. Allison, 431 U.S. at 74, and Lewis has provided no basis for ignoring that presumption.

It is obvious that this claim derives not from any deficiencies his attorney's part but instead from Lewis's dissatisfaction with the length of his sentence, which was based solely upon the many serious crimes on which he was indicted. See United States v. Garquilo, 324 F.2d 795, 797 (2d Cir. 1963) ("A convicted defendant is a dissatisfied client, and the very fact of his conviction will seem to him proof positive of his counsel's incompetence.").

### 2. **Failure to Object to Limiting Instructions (Ground IV)**

Petitioner also faults counsel for failing to object to the limiting instructions issued by the trial court in connection with the admission of Investigator Gropp's and Investigator Dominick's testimony concerning out-of-court statements made by Petitioner's co-perpetrator, Switzer. As discussed below in Section III.C.3, the limiting instructions were not improper. Therefore, trial counsel was not professionally unreasonable in objecting to them, and Lewis could not have been prejudiced by trial counsel's failure to object. See Williams v. United States, Nos. 00 Cr. 1008(NRB), 09 Civ. 2179(NRB), 09 Civ. 3493(NRB), 09 Civ. 2535(NRB), 2011 WL 3296101, at *7 (S.D.N.Y. July 28, 2011) ("[A] defendant is not entitled to have the exact language he may want read to the jury, so long as the charge actually given properly addresses the necessary legal issues. Thus, defense counsel's decision not to object to the limiting instruction was not unreasonable and did not cause [defendant] prejudice.") (internal citation and footnote omitted).

### 3. **Cumulative Effect of Counsel's Alleged Errors**

The Second Circuit has noted that since a claim of ineffective assistance of counsel "can turn on the cumulative effect of all of counsel's actions, all [the] allegations of ineffective assistance should be reviewed together." Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991) (citing Strickland, 466 U.S. at 695-96). However,

Lewis has not demonstrated that any acts or omissions by his attorney, either during the plea process or at trial, "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result[,]" Strickland, 466 U.S. at 686. It follows that if Lewis cannot establish his Strickland claim under a de novo standard, he cannot obtain habeas relief under 28 U.S.C. § 2254(d)(1). See Richter, 131 S. Ct. at 788 (When Strickland and AEDPA "apply in tandem, review is 'doubly' [deferential].") (quotation omitted).

## C. Erroneous Admission of Out-Of-Court Statements (Ground III & V)

### 1. Confrontation Clause Violation

Lewis asserts that his rights under the Sixth Amendment's Confrontation Clause were violated when two police officers were allowed to testify that they had informed Petitioner during his interrogation that Switzer had implicated him in the crimes and that there were witnesses who had identified him at the crime scene. The Fourth Department held that although the codefendant's statement was testimonial under Crawford v. Washington, ___ U.S. ___, ___, 124 S. Ct. 1354, 1365 (2004), "it was not offered for the truth of the facts asserted therein, but was instead offered to set forth the circumstances in which [Petitioner] admitted his culpability after initially denying all involvement in the crimes[.]" People v Lewis, 11 A.D.3d 954, 782 N.Y.S.2d 321, 322 (4th Dept. 2004) (internal citations omitted)). Thus, the Fourth

-17-

Department held, the use of the codefendant's statement did not violate the Confrontation Clause. Id. at 955-56 (quoting People v. Reynoso, 2 N.Y.3d 820, 821 (2004) (quoting Crawford, 124 S. Ct. at 1369 n.9 (noting that "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"); other citation omitted)). Moreover, the Fourth Department found, the trial court "gave appropriate limiting instructions to the jury each of the three times that the issue of the codefendant's statement arose, and it is presumed that the jury followed those instructions[.]" Id. at 956. The Fourth Department's adjudication of this claim on the merits was not contrary to, or an unreasonable application of clearly established Supreme Court precedent on this issue, as discussed further below.

"The Confrontation Clause of the Sixth Amendment, which applies to the states through the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to confront the witnesses against him." Henry v. Speckard, 22 F.3d 1209, 1214 (2d Cir. 1994) (citation omitted). Thus, the Confrontation Clause prohibits the prosecution from introducing testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 53-57. The Supreme Court declined "to spell out a comprehensive definition of 'testimonial'" in Crawford, "stating

that, "[w]hatever else [the term] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  541 U.S. at 68.

The Fourth Department correctly determined that Switzer's statements, made while he was being interrogated by the police, were testimonial. Nevertheless, as the Fourth Department observed, no Confrontation Clause issue was presented where, as here, the out-of-court statements were admitted for purposes other than showing the truth of the matter asserted in them. Crawford, 541 U.S. at 59 n. 9 (citing Tennessee v. Street, 471 U.S. 409, 414 (1985)); accord United States v. Logan, 419 F.3d 172, 177 (2d Cir. 2005). Courts routinely have allowed the introduction of out-of-court statements intended to explain how and why a defendant made a confession and to rebut a defendant's argument that the confession was coerced. See, e.g., Street, 471 U.S. at 414; Harris v. New York, 401 U.S. 222, 226 (1971) (holding that statements elicited from a defendant in violation of his Miranda rights could be introduced to impeach that defendant's credibility when the jury was instructed that the statements were not to be considered as evidence of his guilt).

In Street, the clearly established Supreme Court precedent for purposes of this claim, the defendant testified that his confession was coerced in that it "was derived from a written statement that

Peele [, a non-testifying codefendant,] had previously given the Sheriff [and that the Sheriff] read from Peele's statement and directed [Street] to say the same thing." Street, 471 U.S. at 411. In light of the differences between the two confessions, the prosecutor had the sheriff read Peele's confession. The Supreme Court found that admission of Peele's confession did not violate the Confrontation Clause because "the prosecutor did not introduce Peele's out-of-court confession to prove the truth of Peele's assertions."  471 U.S. at 413. In other words, Peele's confession was not hearsay under traditional rules of evidence and, in fact, the nonhearsay use of Peele's confession was critical to rebut Street's testimony that his own confession was derived from Peele's. Id. Before the sheriff read the accomplice's statement to the jury, "the trial judge twice informed the jury that it was admitted 'not for the purpose of proving the truthfulness of his statement, but for the purpose of rebuttal only.'" Id. at 412 (quotation omitted). The trial court issued a similar limiting instruction in its final instructions to the jury. Id.

The Supreme Court concluded that "[t]he *nonhearsay* aspect of [the co-conspirator's] confession—not to prove what happened at the murder scene but to prove what happened when [the defendant] confessed—raise[d] no Confrontation Clause concerns." Id. at 414 (emphasis in original). The concern, rather, was that the jury might use the co-conspirator's statement in a manner inconsistent

with the Confrontation Clause, i.e., to infer Street's guilt even though Street had not had an opportunity to cross-examine the witness. Id. The Supreme Court detected no such problem in Street's case, hold that "the trial judge's instructions were the appropriate way to limit the jury's use of [the co-conspirator's confession] in a manner consistent with the Confrontation Clause." Id. at 417. "Street makes clear that a jury's understanding of the distinction between substantive and impeachment uses of inculpatory evidence cannot be taken for granted," and therefore an appropriate jury instruction "to prohibit jury misuse of such evidence . . . was essential to the holding in Street." Adamson v. Cathel, 633 F.3d 248, 258 (3d Cir. 2011) (footnote omitted).

Here, the Fourth Department's rejection of Lewis's Confrontation Clause claim was a correct application of Street. The prosecution introduced parts of Switzer's confession "for the legitimate, nonhearsay purpose," Street, 471 U.S. at, of rebutting Lewis's claim that his own confession was coerced and a complete fabrication. "The jury's attention was directed to this distinctive and limited purpose," id., by the trial judge's instructions, issued immediately after the testimony regarding Switzer's statement. See id. ("[W]e hold that the trial judge's instructions were the appropriate way to limit the jury's use of [the co-conspirator's confession] in a manner consistent with the Confrontation Clause."). Habeas relief therefore is unwarranted on

this claim. <u>Cf.</u> <u>Adamson</u>, 633 F.3d at 256 ("[T]he presentation at [petitioner]'s trial of portions of his accomplices' incriminating statements, *without* a limiting instruction, was contrary to the Supreme Court's clearly established precedent in <u>Street</u>, which required such an instruction.") (emphasis supplied).

### 2.   Evidentiary Error

Petitioner argues that the references to the out-of-court statements by Switzer violated his right to a fair trial. This argument is also without merit. In determining whether a state court's alleged evidentiary error deprived a habeas petitioner of a fair trial, federal habeas courts engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. <u>Wade v. Mantello</u>, 333 F.3d 51, 59-60 & n. 7 (2d Cir. 2003).

Here, the Fourth Department held that the evidence was properly admitted. This was a correct ruling as a matter of New York state law, which permits such testimony to be introduced for the non-hearsay purpose of rebutting a defendant's challenge to the voluntariness of a confession. <u>See</u>, <u>e.g.</u>, <u>People v. Glover</u>, 195 A.D.2d 999, 600 N.Y.S.2d 562, 562-63 (4th Dept. 1993) ("[I]n the absence of circumstances involving physical force, voluntariness may best be determined through an examination of the totality of the circumstances surrounding the confession. Thus, the trial court

properly allowed testimony by the interrogating officer that he told defendant he disbelieved defendant's initial denial of participation in the burglaries because the officer possessed information from someone that two black males and a car 'very similar' to defendant's car had been seen leaving the scene of the burglary. It was not hearsay because the testimony was not offered for its truth, but to establish the circumstances in which the statement was obtained, and to rebut defendant's argument that the officer coerced or fabricated defendant's statement.") (internal quotation marks and quotation omitted).

The proffered statements by Switzer unquestionably were relevant, as they were offered by the prosecution to rebut the defense claim of fabrication and explain why Petitioner had changed his story and ultimately confessed to his participation in the robberies (his "right-hand man" and other witnesses had inculpated him, and his previous statement denying any involvement had been exposed as a lie). In addition, each time the trial court admitted evidence concerning the out-of-court statements, it gave an appropriate limiting instruction. See, e.g., Ramos v. Phillips, No. 104-CV-1472-ENV, 2006 WL 3681150, at *8 (E.D.N.Y. Dec. 12, 2006) (denying habeas claim of evidentiary error where "[t]he objected to evidence [a statement inculpating petitioner by his girlfriend] was offered to dispel the defense argument that petitioner's confession may have resulted from police abuses.

Contrary to petitioner's contention, the statement was not admitted to explain and draw attention to his immediate reaction of silence" and "[m]ost importantly, when the trial court admitted the evidence, it gave an appropriate limiting instruction") (footnote omitted).

Finally, as discussed above in Section III.C.1, the admission of Switzer's out-of-court statements with appropriate limiting instructions was not incorrect as a matter of federal constitutional law. Habeas relief therefore is not warranted on this claim.

### 3.    Erroneous Limiting Instructions

Petitioner contends that the trial court's limiting instructions to the jury regarding how they could use Switzer's statement deprived him of his due process right to a fair trial. The Fourth Department held that the trial court "gave appropriate limiting instructions to the jury each of the three times that the issue of the codefendant's statements arose, and it is presumed that the jury followed those instructions[.]" People v. Lewis, 11 A.D.3d at 956 (citations omitted). The Fourth Department went on to hold that because Lewis "did not request any further instructions after the limiting instructions were given, his present contention that the limiting instructions were inadequate is not preserved for . . . review[.]" Id. (citation omitted). Although it appears that the claim may be barred under the adequate and independent state

ground doctrine, Respondent has not raised the affirmative defense of procedural default and arguably has waived it. See Gray v. Netherland, 518 U.S. 152, 165-66 (1996). Rather than address the procedural default issue, the Court proceeds, in the interest of judicial efficiency, to the merits. Even under a de novo standard of review, this claim does not warrant habeas relief.

Errors with respect to state jury instructions are generally not grounds for federal habeas relief. See Gilmore v. Taylor, 508 U.S. 333, 343-44 (1993) (noting that the rule of Estelle v. McGuire, 502 U.S. 55, 67-68 (1991), is that "instructional errors of state law generally may not form the basis for federal habeas relief"). Before a federal court may overturn a conviction resulting from a state trial in which [an inadequate] instruction was used, it must be established not merely that the instruction is "undesirable, erroneous, or even universally condemned," but that it violated some federal constitutional right which was guaranteed to the defendant by the Fourteenth Amendment. Cupp v. Naughten, 414 U.S. 141, 146 (1973). As discussed below, Lewis has not shown an error of state law, much less an error of federal constitutional magnitude.

At the appropriate times during the officers' testimony, the trial court gave the agreed-upon limiting instructions to the effect that the statement was made, not for the truth of what that fact is, but merely that it was said; and that the jury could not

use it as evidence that, e.g., Switzer stated that Lewis participated in the crime. During Investigator Gropp's testimony, the trial court told the jury,

> [T]his is a statement that's being offered not for the truth that it contains, but the fact it was said. In other words, it's only admitted [sic] that the officer asked Mr. Lewis and posed that question to him with that statement, but not for the truth that Benjamin Switzer said he was involved.

T.387.

When Investigator Gropp testified that "Switzer put a gun in his hand and put him shooting the victims. He [Lewis] denied having a gun[,]" T.400, the trial court gave the following limiting instruction:

> [T]hat statement is admitted solely for the fact that it was said, not the truth that it contains. And what I mean by that is, you may not accept as true that witnesses identified him with a gun. I mean at least from this officer.

T.400-01.

Finally, when Investigator Dominick testified that he told Lewis that his "friend Ben Switzer did implicate him in the shooting," T.435, the trial court issued the following instruction:

> [T]his is being introduced for the fact it was said, not the truth it contains. Namely, it's not evidence of the fact that Ben Switzer named him as a codefendant or that other witnesses identified the defendant.

T.435. Notably, defense counsel did not take exception to any of the three limiting instructions.

On appeal, Petitioner's new counsel argued that there was no possible jury instruction that could have ameliorated the prejudicial impact of the testimony, which he claimed violated Bruton v. United States, 391 U.S. 123, 135-36 (1968) (holding that a codefendant's confession, which was inadmissible hearsay as to Bruton, could not be admitted as substantive evidence even accompanied by a limiting instruction). However, the police officers' testimony concerning Switzer's out-of-court statements did not create a Bruton problem, because the jury was "pointedly instructed by the trial court 'not to consider the truthfulness of [codefendant's] statement in any way whatsoever.'" Street, 471 U.S. at 412 (quotation to record omitted). Under these circumstances, a court may "rely on the 'crucial assumption' that the jurors followed 'the instructions given them by the trial judge.'" Id. at 415 (quoting Marshall v. Lonberger, 459 U.S. 422, 438, n. 6 (1983) (quotation and some internal quotation marks omitted)). Thus, contrary to Petitioner's contention, it is simply incorrect as a matter of law that jury instructions cannot ameliorate any possible harm from the introduction of a co-defendant's statement for legitimate nonhearsay purposes.

The Court notes that the trial judge's phraseology at times was inartful, such as when he stated the evidence was not being admitted "for the truth it contains". Petitioner argues that this statement implied that Switzer's statements were true and thereby

negatived any curative effect of the instructions. It is well established, however, that a challenged instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. at 147). The trial court went on to explain what it meant by that statement, e.g., that the jury could "not accept as true that witnesses identified him with a gun." When read in context, the jury instructions conveyed the correct legal principles to the jury. The Court cannot find that the instructions "so infused the trial with unfairness as to deny due process of law[,]" Lisenba v. California, 314 U.S. 219, 228 (1941), and therefore habeas relief is not warranted. See McGuire, 502 U.S. at 75 ("While the instruction was not as clear as it might have been, we find that there is not a 'reasonable likelihood' that the jury would have concluded that this instruction, read in the context of other instructions, authorized the use of propensity evidence pure and simple.") (quotation omitted).

## IV.   Petitioner's Motion for Reconsideration

Motions for reconsideration are assessed under a very strict standard. Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). Because "[r]econsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of

scarce judicial resources[,]" R.F.M.A.S., Inc. v. So, 640 F. Supp.2d 506, 509 (S.D.N.Y. 2009) (quotation marks and citation omitted), motions for reconsideration are granted only where the moving party is able to point to some controlling decision or other material "that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Although a court may grant the motion "to correct a clear error of law or prevent manifest injustice," reconsideration should not be granted where the moving party seeks only to relitigate an issue already decided. Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004).

Petitioner here seeks to relitigate issues that already have been decided, assailing the Court's Decision and Order regarding the motion to amend as "self-conflicting, bias, unilateral, and basically unfair, and unbalanced." Petitioner's Response, ¶39 (Dkt. #36). However, Petitioner has not directed the Court's attention to any controlling authority that it overlooked. See Eisemann v. Greene, 204 F.3d 393, at 395 n. 2 (2d Cir. 2000) ("To be entitled to reargument, a party 'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'") (quotation omitted). Rather, a reasonable interpretation of Petitioner's motion is that it repeats arguments that were already fully considered by the Court. The Court

therefore adheres to its original ruling regarding the motion to amend.

## V.    Conclusion

For the foregoing reasons, Rommel Lewis's request for a writ of habeas corpus is denied, and the petition (Dkt. #1) is dismissed. The motion for reconsideration (Dkt. #36) is denied with prejudice. Because Lewis has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

Any application for leave to appeal in forma pauperis must be made to the Second Circuit Court of Appeals in accordance with FED. R. APP. P. 24(a)(1), (4), & (5). See id. Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          July 17, 2012

-30-